UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------x

24-CR-447(NGG)

UNITED STATES OF AMERICA,

United States Courthouse
Brooklyn, New York

-against-

May 13, 2026

BRUCE SILVA AND HASSAN ELLIOTT,

Defendants.
---------------------------------x

TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
BEFORE THE HONORABLE LARA K. ESHKENAZI
UNITED STATES MAGISTRATE JUDGE

APPEARANCES

For the Government: UNITED STATES ATTORNEY'S OFFICE
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201
BY: AMANDA SHAMI, AUSA

For Defendant Silva: QUINN EMANUEL URQUHART & SULLIVAN
295 5th Avenue
New York, New York 10016
BY: MARC L. GREENWALD, ESQ.
DESTINY ROSE MURPHY, ESQ.

For Defendant Elliott: KENNETH J. MONTGOMERY, PLLC
396 waverly avenue
Brooklyn, New York 11238

Transcription Service: Georgette K. Betts, RPR, FCRR, CCR
Phone: (201)314-3902
Email: Georgetteb25@gmail.com

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

(In open court.)

MR. GREENWALD: One minute, your Honor.

THE COURT: Yes. Just for the record, I was going to do them together but if your client needs more time I can take the other plea first and then do yours second, or if you prefer, if there is not an issue, then I was going to do them at the same time if there is no objection to that.

MR. GREENWALD: There is no objection. I think that will be much more efficient, but let me see --

THE COURT: Okay.

MR. GREENWALD: -- if Mr. Silva needs more time, we can proceed that way.

THE COURT: Okay, that's fine.

(Pause in proceedings.)

THE COURT: I'm ready whenever you are.

THE COURTROOM DEPUTY: Plea hearing 24-CR-447 as to all defendants.

Can everyone state their appearance for the record starting with the AUSA.

MS. SHAMI: Good afternoon, your Honor. Assistant U.S. Attorney Amanda Shami for the government.

THE COURT: Good afternoon.

MR. GREENWALD: Mark Greenwald and Destiny Rose Murphy, Quinn Emanuel Urquhart & Sullivan, CJA counsel to Mr. Silva.

Good afternoon, your Honor.

THE COURT: Good afternoon, and good afternoon, Mr. Silva.

DEFENDANT SILVA: Good afternoon, Miss.

MR. MONTGOMERY: Good afternoon, your Honor. Kenneth Montgomery as well as paralegal Luiz Hernandez for Hassan Elliott.

THE COURT: Good afternoon, and good afternoon, Mr. Elliott.

DEFENDANT ELLIOTT: Good afternoon.

THE COURT: So starting -- yes, starting with Mr. Greenwald, how does your client wish to proceed today?

MR. GREENWALD: Yes, your Honor. At this time Mr. Silva would like to withdraw his previously entered plea of not guilty and enter a plea of guilty pursuant to plea agreement with the government.

THE COURT: Okay. Mr. Montgomery, how would your client like to proceed today?

MR. MONTGOMERY: In the same fashion, your Honor. Mr. Elliott would like to withdraw his previously entered plea of not guilty and enter a plea of guilty to the negotiated plea agreement with the government.

THE COURT: Okay. Just for both of you, I'm going to be doing this together, but I have to be clear for the record. So sometimes I'm going to have to repeat questions,

it might get a little repetitive. You might hear me ask one of you the exact same question that I'm going to ask the other one, but I need to make sure that the record is very clear and I'll explain all of that in a moment.

But in the meantime, taking a plea is a very serious decision. I need to make sure that both of you understand your rights and the consequences of the plea. I'm going to be explaining a lot to you and I'm going to be asking you some questions and I need your answers to be under oath. So I'm going to ask my deputy to swear each of you in at this time.

THE COURTROOM DEPUTY: Can you both please stand and raise your right hand.

(The defendants, BRUCE SILVA and HASSAN ELLIOTT were sworn/affirmed.)

DEFENDANT SILVA: Yes.

DEFENDANT ELLIOTT: Yes.

THE COURT: And just letting the record reflect that both Mr. Silva and Mr. Elliott responded yes.

Okay.

Now that you both have been sworn to tell the truth, you must tell the truth. If you were to deliberately lie or omit material information in response to any question that I ask you -- I'm just going to wait a moment.

Do you need a minute?

MR. MONTGOMERY: One second, your Honor.

THE COURT: Yes.

MR. MONTGOMERY: Thank you, your Honor.

THE COURT: I'm going to start that over again.

Now that you've been sworn to tell the truth, you must tell the truth. If you were to deliberately lie or omit any material information in response to any question that I ask you, you could face additional criminal charges for perjury or making a false statement. I'm going to ask each of you individually if you understand that.

Mr. Silva?

DEFENDANT SILVA: Yes, your Honor.

THE COURT: Mr. Elliott?

DEFENDANT ELLIOTT: Yes.

THE COURT: If there's anything that you do not understand or if you need me to repeat anything, please ask. It's important that you understand everything that goes on in this proceeding.

Mr. Silva, do you understand that?

DEFENDANT SILVA: Yes, your Honor.

THE COURT: And Mr. Elliott?

DEFENDANT ELLIOTT: Yes.

THE COURT: Also, if you need to speak privately to your attorney at any time, please ask and I will give you the time to do that.

Do you understand that?

DEFENDANT SILVA: Yes.

DEFENDANT ELLIOTT: Yes.

THE COURT: I think I neglected to also tell you that if you make a false statement here, in addition to facing criminal charges for perjury or making a false statement, in any such prosecution the government could use the statement you made under oath here today against you. And I want to make sure you each understand that. Starting with Mr. Silva.

DEFENDANT SILVA: No, I don't understand.

THE COURT: Okay. So what I'm saying to you is right now I had my deputy just sworn you in --

DEFENDANT SILVA: Yeah.

THE COURT: -- to tell the truth, so if you were to lie about any -- in answer to any question that I ask you or omit any material information, it's a statement that you made in court where you lie or omit that information could be used in a criminal prosecution against you.

Do you understand that?

DEFENDANT SILVA: Yes.

THE COURT: Okay. Mr. Elliott, do you understand that?

DEFENDANT ELLIOTT: Yes.

THE COURT: Okay. So the first issue I want to

address today is the consent to have me hear your plea today. I'm a magistrate judge. Judge Nicholas Garaufis is the assigned district judge in this case. He's the one who is going to be sentencing you and he will make the ultimate decision as to whether or not to accept your guilty plea. You have the right to have Judge Garaufis listen to your plea and if you chose to do that, there would be no prejudice to you.

Alternatively, you could choose to waive the right to have Judge Garaufis listen to your plea and instead I will listen to it today. We will have a transcript of the proceedings made and Judge Garaufis will review that transcript when he decides whether to accept your plea and what your sentence will be.

So starting with Mr. Silva, have you reviewed the document to consent to have a plea taken before myself, Magistrate Judge Lara Eshkenazi?

DEFENDANT SILVA: Yes, ma'am.

THE COURT: And is this your signature on the document?

DEFENDANT SILVA: Yes, your Honor.

THE COURT: Okay. Have you had enough time to discuss this document with your attorney?

DEFENDANT SILVA: Yes.

THE COURT: So this document says that you're

consenting to have the plea taken before myself, a magistrate judge, instead of a district judge.

Do you understand that?

DEFENDANT SILVA: Yes.

THE COURT: Do you wish to give up your right to have Judge Garaufis listen to your plea?

DEFENDANT SILVA: Yes.

THE COURT: Are you making that decision voluntarily and of your own free will?

DEFENDANT SILVA: Yes.

THE COURT: Has anyone threatened or promised you anything to get you to agree to have me hear your plea?

DEFENDANT SILVA: No.

THE COURT: Okay. I find that Mr. Silva is knowingly and voluntarily consenting to plead guilty before the magistrate judge and I will sign the consent.

Turning to Mr. Elliott, have you had an opportunity to review the document consenting to have the plea taken before a magistrate judge?

DEFENDANT ELLIOTT: Yes.

THE COURT: Have you had time to discuss this document with your attorney?

DEFENDANT ELLIOTT: Yes.

THE COURT: Do you understand that this document says you're consenting to have the plea taken before myself,

a magistrate judge, instead of the district judge assigned to the case?

DEFENDANT ELLIOTT: Yes.

THE COURT: And is this your signature on the top line of the document?

DEFENDANT ELLIOTT: Yes.

THE COURT: Do you wish to give up your right to have Judge Garaufis listen to your plea?

DEFENDANT ELLIOTT: Yes.

THE COURT: Are you making that decision voluntarily and of your own free will?

DEFENDANT ELLIOTT: Yes.

THE COURT: Has anyone threatened or promised you anything to get you to agree to have me hear your plea?

DEFENDANT ELLIOTT: No.

THE COURT: Okay. I find that Mr. Elliott is knowingly and voluntarily consenting to plead before the magistrate judge and I will sign the consent.

I now need to ask each of you questions about your state -- your current state of mind today and so I'm going to do that individually so the record is clearer. I'm going to start first with Mr. Silva.

All right, Mr. Silva, can you state your full name.

DEFENDANT SILVA: Bruce Silva.

THE COURT: How old are you?

DEFENDANT SILVA: I'm 30.

THE COURT: How far did you go in school?

DEFENDANT SILVA: Tenth grade.

THE COURT: Have you had any problems communicating with your attorney?

DEFENDANT SILVA: No.

THE COURT: Are you now or have you recently been under the care of a doctor or a psychiatrist for any reason?

DEFENDANT SILVA: No.

THE COURT: Are you taking any medications?

DEFENDANT SILVA: No.

THE COURT: Have you had any alcohol to drink within the last 24 hours?

DEFENDANT SILVA: No.

THE COURT: Have you taken any drugs recently?

DEFENDANT SILVA: No.

THE COURT: Have you ever been hospitalized or treated for drug addiction?

DEFENDANT SILVA: No.

THE COURT: Have you ever been hospitalized or treated for alcoholism?

DEFENDANT SILVA: No.

THE COURT: Have you ever been treated for a mental or emotional issue?

DEFENDANT SILVA: No.

THE COURT: As you sit here today, is your mind clear?

DEFENDANT SILVA: Yeah.

THE COURT: Do you understand why you're here and what we're doing here today?

DEFENDANT SILVA: Yes, ma'am.

THE COURT: I note for the record that Mr. Silva appears to be alert and able to understand the proceedings today.

Okay, Mr. Elliott, I'm going to ask you now the same questions.

Can you state your full name, please.

DEFENDANT ELLIOTT: Hassan Elliott.

THE COURT: How old are you?

DEFENDANT ELLIOTT: Twenty-seven.

THE COURT: How far did you go in school?

DEFENDANT ELLIOTT: Eleventh grade.

THE COURT: Have you had any problems communicating with your attorney?

DEFENDANT ELLIOTT: No, ma'am.

THE COURT: Are you now or have you recently been under the care of a doctor or psychiatrist for any reason?

DEFENDANT ELLIOTT: No.

THE COURT: Are you taking any medications?

DEFENDANT ELLIOTT: No.

THE COURT: Have you had any alcohol to drink within the last 24 hours?

DEFENDANT ELLIOTT: No.

THE COURT: Have you taken any drugs recently?

DEFENDANT ELLIOTT: No.

THE COURT: Have you ever been hospitalized or treated for drug addiction?

DEFENDANT ELLIOTT: No.

THE COURT: Have you ever been hospitalized or treated for alcoholism?

DEFENDANT ELLIOTT: No.

THE COURT: Have you ever been treated for a mental or emotional issue?

DEFENDANT ELLIOTT: No.

THE COURT: Is your mind clear now?

DEFENDANT ELLIOTT: Yes.

THE COURT: Do you understand why you're here today and what we're doing here today?

DEFENDANT ELLIOTT: Yes.

THE COURT: I note for the record that Mr. Elliott appears alert and able to understand the proceedings today.

Starting with Mr. Silva's attorney, have you had any problems communicating with your client?

MR. GREENWALD: No, your Honor.

THE COURT: You can stay seated, just speak into the microphone.

MR. GREENWALD: No, your Honor.

THE COURT: Is he capable of understanding the nature of the charge to which he is pleading guilty?

MR. GREENWALD: Yes, your Honor.

THE COURT: Have you discussed the charge with your client and what it means to plead guilty?

MR. GREENWALD: Ms. Murphy and I have, your Honor.

THE COURT: Have you advised him of the maximum sentence and fine that can be imposed as a result of his plea here?

MR. GREENWALD: We have, your Honor.

THE COURT: Have you discussed with him how the sentencing guidelines operate?

MR. GREENWALD: Yes, yes, your Honor.

THE COURT: Have you discussed with him any potential -- let me back up. What is the citizen status of your client?

MR. GREENWALD: Mr. Silva is an American citizen, your Honor.

THE COURT: Born or naturalized?

MR. GREENWALD: Born in the United States, your Honor.

THE COURT: Okay. Do all parties agree that I do

not need to go over any immigration consequences then in this case?

MS. SHAMI: Yes, your Honor, that's correct.

MR. MONTGOMERY: Correct.

THE COURT: Are you satisfied that your client has understood all of your discussions with him?

MR. GREENWALD: Yes, your Honor.

THE COURT: Do you think he understands the rights he will be waiving by pleading guilty?

MR. GREENWALD: Yes, your Honor.

THE COURT: Do you have any doubt about his competence to plead guilty here today?

MR. GREENWALD: I do not, your Honor.

THE COURT: Okay. Turning to Mr. Montgomery, Mr. Montgomery, have you had any problems communicating with Mr. Elliott?

MR. MONTGOMERY: No, your Honor.

THE COURT: Is he capable of understanding the nature of the charge to which he is pleading guilty?

MR. MONTGOMERY: Yes, he is.

THE COURT: Have you discussed the charge with your client and what it means to plead guilty?

MR. MONTGOMERY: Yes, I have.

THE COURT: Have you discussed with him the maximum sentence and fine that can be imposed as a result of

his plea?

MR. MONTGOMERY: Yes, I have.

THE COURT: Have you discussed with him how the sentencing guidelines operate?

MR. MONTGOMERY: Yes, I have.

THE COURT: And what is his citizenship status?

MR. MONTGOMERY: He's an American citizen natural -- born --

THE COURT: Naturalized?

MR. MONTGOMERY: No, no, born, born here.

THE COURT: Okay. So born here?

MR. MONTGOMERY: Yes.

THE COURT: So do you agree that we do not need to go over any immigration consequences --

MR. MONTGOMERY: Correct, your Honor --

THE COURT: -- today?

MR. MONTGOMERY: -- we don't.

THE COURT: Are you satisfied that your client understood all of your discussions?

MR. MONTGOMERY: I am.

THE COURT: Do you think that he understands the rights he will be waiving by pleading guilty?

MR. MONTGOMERY: I do.

THE COURT: Do you have any doubt about his competence to plead guilty here today?

MR. MONTGOMERY: No.

THE COURT: Turning to Mr. Silva, have you had enough time to discuss your case with your attorney?

DEFENDANT SILVA: Yes, ma'am.

THE COURT: Are you satisfied with the assistance that your attorney has given you in this case?

DEFENDANT SILVA: Yes, ma'am.

THE COURT: Turning to Mr. Elliott, have you had enough time to discuss --

DEFENDANT ELLIOTT: Yes.

THE COURT: Let me finish the question for the record, okay.

Mr. Elliott, have you had enough time to discuss your case with your attorney?

DEFENDANT ELLIOTT: Yes.

THE COURT: Are you satisfied with the assistance your attorney has given you in this case?

DEFENDANT ELLIOTT: Yes.

THE COURT: I'm now going to review the charge that has been filed against you.

Have you both received a copy of the indictment in the case, starting with Mr. Silva?

DEFENDANT SILVA: Yes.

THE COURT: Mr. Elliott?

DEFENDANT ELLIOTT: Yes.

THE COURT: Have you each discussed the charge in the indictment with your attorney.

Mr. Silva?

DEFENDANT SILVA: Yes.

THE COURT: Mr. Elliott?

DEFENDANT ELLIOTT: Yes.

THE COURT: I understand that you are both today seeking to plead guilty to Count Two of the indictment charging each of you with assault in a federal detention facility.

Starting with Mr. Silva, do you understand what you've been charged with?

DEFENDANT SILVA: Yes, ma'am.

THE COURT: Mr. Elliott?

DEFENDANT ELLIOTT: Yes.

THE COURT: I'm going to now explain to you what the government would need to prove beyond a reasonable doubt in order to prove the charge that you are pleading to today.

First, that you intentionally struck John Doe 2;

Second, that you used a dangerous weapon;

Third, that you acted within intent to do bodily harm to John Doe 2 and;

Fourth, that the assault took place within the special maritime and territorial jurisdiction of the United States.

The government would also need to prove beyond a reasonable doubt the elements of assault resulting in serious bodily injury in a federal detention facility. Those elements are:

First, that you assaulted John Doe 2 by intentionally striking him;

Second, as a result, John Doe 2 suffered serious bodily injury, and;

Third, the assault took place within the special maritime and territorial jurisdiction of the United States.

Starting with Mr. Silva, do you understand what the government would have to prove to convict of you this offense?

DEFENDANT SILVA: Yes, ma'am.

THE COURT: Mr. Elliott?

DEFENDANT ELLIOTT: Yes.

THE COURT: Counsels, have I misstated or omitted any of the essential elements of the offense? Starting with government.

MS. SHAMI: No, your Honor.

MR. GREENWALD: No, your Honor.

MR. MONTGOMERY: No, your Honor.

THE COURT: AUSA Shami, under the Crime Victims Rights Act, crime victims have a right to reasonably be heard at any public proceeding in the district court,

including plea hearings.

Does this case implicate the CVRA?

MS. SHAMI: It does, your Honor, and the government made notification to the victims.

THE COURT: And are there any victims here today who wish to be heard?

MS. SHAMI: No, your Honor.

THE COURT: All right.

Now, by pleading guilty you're giving up some very valuable rights and I want to make sure that you understand the rights you will be giving up if you plead guilty and I'll explain those now.

First, you have the right to plead not guilty and to continue to not plead guilty.

Do you each understand that?

Mr. Silva?

DEFENDANT SILVA: Yes, ma'am.

THE COURT: Mr. Elliott?

DEFENDANT ELLIOTT: Yes.

THE COURT: If you plead not guilty, under the Constitution and the laws of the United States, you have the right to a speedy and public trial before a jury.

Do you understand that?

Mr. Silva?

DEFENDANT SILVA: Yes, ma'am.

THE COURT: And Mr. Elliott?

DEFENDANT ELLIOTT: Yes.

THE COURT: You have the right to be represented by an attorney in any trial and at every other stage of the proceedings. If could you not afford an attorney, one would be appointed for you by the Court at no charge.

Do you understand?

Mr. Silva?

DEFENDANT SILVA: Yes, ma'am.

THE COURT: Mr. Elliott?

DEFENDANT ELLIOTT: Yes.

THE COURT: At trial, you would be presumed innocent. The government would have to prove your guilt beyond a reasonable doubt based on the elements that I just described to you. You would not have to prove your innocence. If the government failed to prove your guilt beyond a reasonable doubt, the jury would have to find you not guilty.

Do you understand that?

Mr. Silva?

DEFENDANT SILVA: Yes.

THE COURT: Mr. Elliott?

DEFENDANT ELLIOTT: Yes.

THE COURT: At trial, witnesses for the government would have to come to court and testify in your presence.

Your lawyer would have the right to cross examine those witnesses and raise any legal objections to the government's evidence.

Do you each understand that?

Mr. Silva?

DEFENDANT SILVA: Yes, ma'am.

THE COURT: And Mr. Elliott?

DEFENDANT ELLIOTT: Yes.

THE COURT: At trial, you also have the right to offer testimony or other evidence in your defense and you would have the right to compel witnesses to testify on your behalf.

Do you understand?

Mr. Silva?

DEFENDANT SILVA: Yes, ma'am.

THE COURT: And Mr. Elliott?

DEFENDANT ELLIOTT: Yes.

THE COURT: At trial, you would have the right to testify on your own behalf, if you chose to do so. But if you chose not to testify, you could not be forced to do so. This is because under the Constitution and the laws of the United States you cannot be forced to be a witness against yourself and to incriminate yourself.

Do you each understand that?

Mr. Silva?

DEFENDANT SILVA: Yes, ma'am.

THE COURT: And Mr. Elliott?

DEFENDANT ELLIOTT: Yes.

THE COURT: Also, if you chose not to testify or to present any evidence in your defense, the fact that you chose not to do so could not be used against you.

Do you understand that, Mr. Silva?

DEFENDANT SILVA: Yes, ma'am.

THE COURT: And Mr. Elliott?

DEFENDANT ELLIOTT: Yes.

THE COURT: If you plead guilty to the crime charged and if your guilty plea is accepted based on my recommendation, you will be giving up your right to a trial and all the other trial rights that I've just discussed. There will be no trial in this case. You will stand convicted of the crime to which you are pleading guilty just as if a jury had found you guilty.

Do you understand that, Mr. Silva?

DEFENDANT SILVA: Can you say it again, miss?

THE COURT: Yes, sure. If you plead guilty today, and your guilty plea is accepted by the district judge based on my recommendation, you're giving up that right to a trial and all those other rights I just discussed and there is not going to be a trial and you would stand convicted of the offense just in the same way as if a jury had found you

guilty after a trial.

Do you understand that?

DEFENDANT SILVA: Yes, ma'am.

THE COURT: And what about Mr. Elliott?

DEFENDANT ELLIOTT: I'm trying to figure out, so you just said that you gotta make a recommendation to another judge to take our guilty plea?

THE COURT: So, as I explained at the beginning when you consented to hear me do this, Judge Garaufis is going to review this transcript today --

DEFENDANT ELLIOTT: Yes.

THE COURT: -- and he's going to look and make sure I didn't forget to ask you any questions or explain any rights to you and that everything looks okay before he accepts the guilty plea.

DEFENDANT ELLIOTT: Okay.

THE COURT: Okay. Do you understand that?

DEFENDANT ELLIOTT: Yes.

THE COURT: Okay. So I'm just going to go back to the other question I just asked you, though, if you plead guilty here today, and the plea is accepted by Judge Garaufis based on my recommendation, you're giving up the right to a trial and all those other rights that I just described. There is not going to be a trial and you would stand convicted of the crime to which you're pleading guilty

just in the same way as if a jury found you guilty.

Do you understand that?

DEFENDANT ELLIOTT: Yes.

THE COURT: Okay. If you plead guilty, I will have to ask you certain questions about what you did in order to satisfy myself and Judge Garaufis that you are in fact guilty of the charge to which you are pleading guilty. You will have to answer my questions truthfully and acknowledge your guilt. What that means is you're giving up the right to not incriminate yourself.

Do you understand that, Mr. Silva?

DEFENDANT SILVA: Yes, ma'am.

THE COURT: Mr. Elliott?

DEFENDANT ELLIOTT: Yes.

THE COURT: So are you each willing to give up your right to a trial and all the other trial rights I just described?

Mr. Silva?

DEFENDANT SILVA: Yes, ma'am.

THE COURT: Mr. Elliott?

DEFENDANT ELLIOTT: Yes.

THE COURT: I understand there are written agreements with each of you in this case that I'm going to mark as exhibits one -- I'll mark Mr. Silva's as Exhibit 1 and the agreement with Mr. Elliott as Exhibit 2.

Mr. Silva, have you had an opportunity to review the plea agreement in this case?

DEFENDANT SILVA: Yes, ma'am.

THE COURT: Did you discuss it with your attorney?

DEFENDANT SILVA: Yes, ma'am.

THE COURT: And I'm reading from the last page where it says: I've read the entire agreement, discussed it with my attorney and I understand all of its terms and am entering into it knowingly and voluntarily.

And, Mr. Silva, is this your signature on the agreement?

DEFENDANT SILVA: Yes, ma'am.

THE COURT: By signing the agreement, do you agree to all of its terms?

DEFENDANT SILVA: Yes, ma'am.

THE COURT: Does the agreement accurately represent your entire understanding of your agreement with the government concerning your plea of guilty?

DEFENDANT SILVA: Yes.

THE COURT: And, Mr. Greenwald, have you discussed the agreement with your client?

MR. GREENWALD: Ms. Murphy and I have, your Honor.

THE COURT: Do you believe he fully understands the terms of the agreement?

MR. GREENWALD: We do.

THE COURT: Does the agreement contain all of the promises made between the government and your client in exchange for his plea of guilty?

MR. GREENWALD: It does, your Honor.

THE COURT: Does the agreement contain all the promises made between -- sorry, turning to the government. Does the government contain all the promises made between the government and Mr. Silva in exchange for his plea of guilty?

MS. SHAMI: Yes, your Honor.

THE COURT: Now, Mr. Elliott, you also have a written agreement. Have had an opportunity to review this document?

DEFENDANT ELLIOTT: Yes, ma'am.

THE COURT: Turning to the last page of the agreement it says: I've read the entire agreement, discussed it with my attorney and I understand all of its terms and am entering into it knowingly and voluntarily.

Is this your signature on the agreement? I'm holding it up, so make sure you look up.

DEFENDANT ELLIOTT: Yes.

THE COURT: Okay. By signing the agreement, do you agree to all of its terms?

DEFENDANT ELLIOTT: Yes.

THE COURT: Does the agreement accurately

represent your entire understanding of your agreement with the government concerning your plea of guilty?

DEFENDANT ELLIOTT: Yes.

THE COURT: Mr. Montgomery, have you discussed the agreement with your client?

MR. MONTGOMERY: I have, your Honor.

THE COURT: Do you believe he fully understands the terms of the agreement?

MR. MONTGOMERY: I do.

THE COURT: Does the agreement contain all the promises made between the government and your client in exchange for his plea of guilty?

MR. MONTGOMERY: It does.

THE COURT: Ms. Shami, does the agreement contain all the promises made between the government and Mr. Elliott in exchange for his plea of guilty?

MS. SHAMI: Yes, it does, your Honor.

THE COURT: Okay. I now want to review the consequences of pleading guilty, and the charge and consequences are the same for both of you so I'm going to go over this just once because it is -- the government can confirm, there is no difference in terms of the maximum, minimums of both of them, correct?

MS. SHAMI: That's correct, your Honor.

THE COURT: Okay. So the charge, assault in a

federal detention facility carries the following potential penalties:

A 10-year maximum term of imprisonment and no minimum term.

Supervised release: After any prison term there is a maximum term of three years.

So what that means is if you're sentenced to a term of imprisonment after you are released from prison, you will be supervised by the Probation Department for up to three years and you would have to abide by their restrictions. If you violated any of the conditions of the supervised release during that period, you could be sentenced to up to two more years in prison without credit for any of the time that you had been on supervised release or in prison for the underlying charges in this case.

Do you each understand that? Starting with Mr. Silva?

DEFENDANT SILVA: Yes, ma'am.

THE COURT: Mr. Elliott?

DEFENDANT ELLIOTT: Yes.

THE COURT: There is a maximum possible fine for each of you of $250,000.

The Court also has the authority to impose restitution where applicable. Your agreement specifies that you will each make full restitution to all victims harmed by

the relevant conduct. The specifics of the collection of the restitution are specified in your agreement.

Starting with Mr. Silva, have you reviewed those specifics and do you understand how restitution will be collected as set forth in your agreement with the government?

DEFENDANT SILVA: No, I don't read that part.

THE COURT: Okay. Why don't you talk to your attorney and make sure you go over those -- the parts of that of the agreement with respect to restitution.

While they're doing that, Mr. Elliott, have you reviewed the restitution provisions in your agreement?

DEFENDANT ELLIOTT: Yes.

THE COURT: Do you understand how the government will collect that restitution?

DEFENDANT ELLIOTT: No.

THE COURT: No. Okay, then I'm going to ask you to speak to your attorney as well.

(Pause in proceedings.)

DEFENDANT ELLIOTT: Yes, I understand.

THE COURT: Let me go back. So starting with Mr. Elliott, have you reviewed the restitution terms in your agreement and how it will be paid?

DEFENDANT ELLIOTT: Yes.

THE COURT: And do you understand them?

DEFENDANT ELLIOTT: Yes.

MR. GREENWALD: Mr. Silva is ready to proceed, your Honor.

THE COURT: Okay. Mr. Silva, have you had an opportunity to review the restitution provisions in your plea agreement?

DEFENDANT SILVA: Yes, ma'am.

THE COURT: Do you understand the specifics of the collection as to how the government will collect that restitution from you?

DEFENDANT SILVA: Yes, ma'am.

THE COURT: Okay. You will both -- you will each be required to pay a mandatory special assessment of $100.

Do you each understand that?

Mr. Silva?

DEFENDANT SILVA: Yes.

THE COURT: And Mr. Elliott?

DEFENDANT ELLIOTT: Yes.

THE COURT: And I just wanted to confirm with the government, there is no forfeiture in this case; is that correct?

MS. SHAMI: That's correct, your Honor.

THE COURT: All right. You're pleading guilty to a felony offense. If the district judge accepts your plea you will be considered guilty of that felony offense. A

felony conviction means you may not possession a firearm, ammunition or destructive device. This means that if you ever possess a firearm, ammunition or destructive device you could be prosecuted in the future for being felon in possession.

Do you understand, Mr. Silva?

DEFENDANT SILVA: Yes, ma'am.

THE COURT: And Mr. Elliott?

DEFENDANT ELLIOTT: Yes.

THE COURT: In addition, having a felony conviction means that you may not have other civil rights such as the right to vote, to hold public office, or serve on a jury.

Do you understand that, Mr. Silva?

DEFENDANT SILVA: Yes, ma'am.

THE COURT: And Mr. Elliott?

DEFENDANT ELLIOTT: Yes.

THE COURT: AUSA Shami, have I misstated or omitted the penalties or consequences for pleading guilty?

MS. SHAMI: No, your Honor, those are complete.

THE COURT: Okay. I'm going ask each of you now, starting with Mr. Silva, do you understand all of the consequences of pleading guilty which I have just described?

DEFENDANT SILVA: Yes, ma'am.

THE COURT: Mr. Elliott, do you understand all of

the consequences of pleading guilty which I have just described?

DEFENDANT ELLIOTT: Yes.

THE COURT: All right. I'm now going to explain how sentencing is going to be determined.

As I mentioned, if you plead guilty, Judge Garaufis is going to be the judge who sentences you. I want to briefly review how he will determine that sentence.

He will undergo an analysis to determine what a reasonable sentence is in your case. As a first step he must consider the advisory sentencing guidelines issued by the United States Sentencing Commission. Those guidelines are just what they say. They are a guide to help the Court decide how to sentence you. They are not mandatory but he is required to consider them.

Have you had a chance, each of you, to discuss the sentencing guidelines with your attorney? Starting with Mr. Silva?

DEFENDANT SILVA: Yes, ma'am.

THE COURT: Mr. Elliott?

DEFENDANT ELLIOTT: Yes.

THE COURT: As a second step, the Court will also consider guidelines factors that may allow him to sentence you above or below the applicable guidelines range. That's what's known as departing upward or departing downward from

the range.

Mr. Silva, do you understand?

DEFENDANT SILVA: Yes, ma'am.

THE COURT: And Mr. Elliott?

DEFENDANT ELLIOTT: Yes.

THE COURT: Finally, the Court must consider several factors set forth in the sentencing statute against all the facts and circumstances of the case to determine whether to impose a sentence within or outside of the guidelines range. Some of those factors include the nature and circumstances of the crime committed, your characteristics and history, the kinds of sentences available, and deterring you or others from committing crimes.

Do you understand that, Mr. Silva?

DEFENDANT SILVA: Yes, ma'am.

THE COURT: And Mr. Elliott?

DEFENDANT ELLIOTT: Yes.

THE COURT: What that means is, generally, until your sentencing hearing, you cannot know with any certainty what the guidelines range will be, whether there will be grounds to depart upwardly or downwardly, or whether the Court will impose a sentence within or outside the guidelines.

Do you each understand that? Starting with

Mr. Silva.

DEFENDANT SILVA: Yes, ma'am.

THE COURT: And Mr. Elliott?

DEFENDANT ELLIOTT: Yes.

THE COURT: To help the judge decide your sentence, the Probation Department will prepare a report in your case. The report will include facts about the case and your background and the law that applies. They will want to interview each of you, and you may each have your attorneys present for that interview. They will also speak to prosecutors, law enforcement agents involved in the case, and possibly others.

Do you each understand that?

Mr. Silva?

DEFENDANT SILVA: Yes, ma'am.

THE COURT: And Mr. Elliott?

DEFENDANT ELLIOTT: Yes.

THE COURT: The report will also include recommended guidelines calculation based on the circumstances of the offense and the extent of your criminal history. Your attorneys, each of your attorneys will be able to review and discuss the report with you and challenge any information stated in the report. The government may also challenge information stated in the report.

Mr. Silva, do you understand?

DEFENDANT SILVA: Yes, ma'am.

THE COURT: And Mr. Elliott?

DEFENDANT ELLIOTT: Yes.

THE COURT: At the sentence hearing the Court will hear arguments from your attorneys or from the government about any objections to the report and then he will rule on them. And then the judge will listen to you, if you chose to speak, your attorney, the government and maybe others about what the sentence should be.

Do you understand, Mr. Silva?

DEFENDANT SILVA: Yes, ma'am.

THE COURT: And Mr. Elliott?

DEFENDANT ELLIOTT: Yes.

THE COURT: The judge will calculate the applicable sentencing guidelines and consider them and the statutory factors and he will impose a sentence based on all of that.

Do you each understand the process I've just described?

Mr. Silva?

DEFENDANT SILVA: Yes, ma'am.

THE COURT: And Mr. Elliott?

DEFENDANT ELLIOTT: Yes.

THE COURT: I'm now going to ask counsel for both sides, starting with the government, what their estimate of

the guidelines are in this case.

MS. SHAMI: Yes, your Honor. So as outlined in paragraph of the plea agreement with both defendants, the government estimates that the guidelines range would be 46 to 57 months, given the deduction of three points for acceptance of responsibility for each with both being Category III. Because the parties agree to a line at the bottom of paragraph 2 and then paragraph 13, that if both defendants pleaded that the government would agree that a six-month downward variance would be calculated by the Court as an appropriate response to the global resolution, and so the government calculates the range would be with that variance 40 months to 51 months.

THE COURT: Okay. Does the defense have anything to add? Starting with Mr. Greenwald.

MR. GREENWALD: No, your Honor.

THE COURT: Mr. Montgomery?

MR. MONTGOMERY: No, your Honor.

THE COURT: In your agreement with the government, you each stipulated to the guidelines calculation that the government just described.

Do you understand that, Mr. Silva?

DEFENDANT SILVA: Excuse me, Miss?

THE COURT: So in your agreement you've stipulated, you each stipulated that what the government

just represented as the guidelines range is in fact the estimated guidelines calculation.

Do you understand that?

DEFENDANT SILVA: Yeah, I just didn't understand, she said I was Category III.

MR. GREENWALD: Mr. Silva has pleaded guilty to another matter in Southern District, but he's yet to be sentenced. His sentencing is scheduled to take place in a few weeks and Mr. Silva believes, and I need to go back and check the math, but until he's sentenced he's in actually Category II but will be Category III by the time, but I haven't checked the math. So I don't know the answer to Mr. Silva's question sitting here right now.

MS. SHAMI: Under the guidelines once convicted, which is the acceptance of the plea, it is considered as if he has been convicted of a prior conviction.

MR. GREENWALD: And Mr. Silva believes that he -- because, theoretically, he could withdraw -- he could seek to withdraw his guilty plea, which he has not done and is now --

DEFENDANT SILVA: It was just a question, Miss, you know.

MR. GREENWALD: So we agree that based on his guilty plea and his expected sentence, that Mr. Silva is Category III as set forth in the agreement, your Honor.

THE COURT: Do you understand that, Mr. Silva? Do you agree with that?

DEFENDANT SILVA: I mean, yeah, yes.

THE COURT: Yes? Okay.

Turning to Mr. Elliott, do you understand that in your agreement you stipulated to the guidelines calculation that was described by Ms. Shami?

DEFENDANT ELLIOTT: Yes.

THE COURT: Okay.

Now, while I've asked Ms. Shami to estimate the applicable guidelines range and you agree with that estimate, the estimate you heard is actually not binding on the Court. Judge Garaufis will do his own sentencing guidelines calculation and that's the calculation that will be used at sentencing.

Do you understand that, Mr. Silva?

DEFENDANT SILVA: Yes, ma'am.

THE COURT: You understand that, Mr. Elliott?

DEFENDANT ELLIOTT: Yes.

THE COURT: And even if your actual guidelines range is different from the estimate, you will -- sorry, I'll wait.

MR. MONTGOMERY: One second, your Honor.

(Pause in proceedings.)

DEFENDANT ELLIOTT: I'm okay, thank you.

THE COURT: So even if your actual guidelines range is different from the estimate, you're not allowed to withdraw your plea of guilty on that basis.

Do you understand that, Mr. Silva?

DEFENDANT SILVA: I didn't hear you, Miss. Excuse me?

THE COURT: So if the actual guidelines range is different from what the government estimated today in court and to what you stipulated to in your agreement, you're not going to be allowed to withdraw your plea of guilty.

Do you understand that?

DEFENDANT SILVA: No, I don't understand.

THE COURT: Okay. So what I was just talking about before, the estimate that you heard in court and that's in your agreement --

DEFENDANT SILVA: Yes.

THE COURT: -- is not binding on Judge Garaufis.

DEFENDANT SILVA: All right.

THE COURT: He's going to do his own sentencing guidelines calculation and that is the calculation that will be used at sentencing.

Do you understand that?

DEFENDANT SILVA: Yes, ma'am.

THE COURT: So what I'm saying is, if that's different from what the estimate was that you heard today,

you will not be allowed to withdraw your plea of guilty on that basis.

Do you understand that?

DEFENDANT SILVA: Yes, ma'am.

THE COURT: Okay. And Mr. Elliott, do you understand that?

DEFENDANT ELLIOTT: Yes.

THE COURT: Similarly, if you are sentenced to something different from what the estimated sentencing guidelines range will be, you will not be allowed to withdraw your plea of guilty.

Do you understand that?

DEFENDANT SILVA: Yes, ma'am.

DEFENDANT ELLIOTT: Yes.

THE COURT: Just for the record, so first, Mr. Silva, you understand? Yes?

DEFENDANT SILVA: Yes.

THE COURT: And Mr. Elliott?

DEFENDANT ELLIOTT: Yes.

THE COURT: Similarly, if you're sentenced -- sorry, let me make -- did I go through that already? I did.

You should also understand that there is no parole in the federal system and if you are sentenced to prison you will not be released on parole.

Do you understand that?

DEFENDANT SILVA: Yes, ma'am.

THE COURT: Under some circumstances you or the government may have the right -- sorry, did I get an answer from Mr. Elliott --

DEFENDANT ELLIOTT: Yes.

THE COURT: -- on that, on the parole question? You understand?

DEFENDANT ELLIOTT: Yes.

THE COURT: Okay. Under some circumstances you or the government may have the right to appeal any sentence imposed on you. For example, if you felt the judge made a mistake in sentencing you, you would have the right to appeal; however, in your agreement with the government, you each agreed that you will not appeal or otherwise challenge the sentence if you're sentenced to 63 months or fewer in prison. You would still be able to assert claims of ineffective assistance of counsel.

Mr. Silva, do you understand that?

DEFENDANT SILVA: Yes, ma'am.

THE COURT: Mr. Elliott, do you understand that?

DEFENDANT ELLIOTT: Yes.

THE COURT: Starting with Mr. Montgomery, is there anything else in the written agreement that I need to review with Mr. Silva?

MR. MONTGOMERY: For Mr. Greenwald, your Honor.

THE COURT: I'm sorry. Mr. Greenwald. I knew I was going to get it wrong at some point.

Mr. Greenwald, is there anything else in the written agreement that I need to review with Mr. Silva?

MR. GREENWALD: No, your Honor.

THE COURT: Okay. Mr. Montgomery, is there anything else in the written agreement that I need to review with Mr. Elliott?

MR. MONTGOMERY: No, your Honor.

THE COURT: Starting with Mr. Silva, do you have any questions on anything we've discussed today?

DEFENDANT SILVA: No, ma'am.

THE COURT: Do you need any time to discuss anything with your attorney?

DEFENDANT SILVA: No, ma'am.

THE COURT: Mr. Greenwald, do you know of any reason why Mr. Silva should not plead guilty?

MR. GREENWALD: I do not, your Honor.

THE COURT: Are you aware of any viable legal defense to the charge?

MR. GREENWALD: No, I'm not, your Honor.

THE COURT: Mr. Silva, are you ready to plead at this time?

DEFENDANT SILVA: Yes, ma'am.

THE COURT: What is your plea to the Count Two of

the indictment charging you with assault in a federal detention facility?

DEFENDANT SILVA: Guilty.

THE COURT: Are you pleading guilty voluntarily and of your own free will?

MR. GREENWALD: Yes, ma'am.

THE COURT: Has anyone threatened or forced you to plead guilty?

DEFENDANT SILVA: No, ma'am.

THE COURT: Other than the promises in your written agreement with the government, has anyone promised you anything to make you plead guilty?

DEFENDANT SILVA: No, ma'am.

THE COURT: Has anyone made any promise to you as to what your sentence will be?

DEFENDANT SILVA: No, ma'am.

THE COURT: Can you please tell me in your own words what you did to make you guilty of the crime charged in Count Two of the indictment?

DEFENDANT SILVA: Yes. On August 27th, 2024, I was in MDC Brooklyn. I was involved in a fight and in the fight while defending myself I stabbed another inmate. I understand that the person I stabbed was seriously injured as a result.

THE COURT: Okay. AUSA Shami, does this

allocution satisfy all the essential elements of the charge to which Mr. Silva is pleading guilty?

MS. SHAMI: I think that the allocution did not include that he acted with intent to do bodily harm and that he intentionally struck John Doe 2.

THE COURT: Okay. So when you engaged in the conduct that you described, did you know what you were doing?

DEFENDANT SILVA: I was just defending myself, Miss, honestly.

THE COURT: Well, what was your intention in the fight?

DEFENDANT SILVA: To strike somebody.

THE COURT: Did you have any intention to hurt the person?

DEFENDANT SILVA: Not really.

MS. SHAMI: Your Honor, I think that the video of the assault shows that the defendant was cornering John Doe 1 when John Doe 2 intervened and that the defendant struck John Doe 2 in the back by stabbing his shank into his back. As I think that while --

THE COURT: Let me ask you this: When you did that -- did you do that? Did you strike him with a shank in his back?

DEFENDANT SILVA: Yes, ma'am.

THE COURT: And when you did that, what were you intending to do?

DEFENDANT SILVA: Honestly, Miss, you know, when he ran up and he intervened, you know, I seen him, like, trying to swing at my brother and it just happened. You know, we was fighting together, so I didn't want him to get struck, so I swung and I, you know.

THE COURT: You wanted him to get -- say that again.

DEFENDANT SILVA: I didn't want my brother to get striked, do you understand what I'm saying? So I striked before he could.

THE COURT: And when you struck him, what was your intention?

DEFENDANT SILVA: Just to, like, get him off of my brother.

MS. SHAMI: I think that would satisfy the elements, your Honor.

THE COURT: Okay.

Do you have anything to add, Mr. Greenwald?

MR. GREENWALD: No, your Honor.

THE COURT: All right.

Based on the information given to me I make the following findings:

First, I find that Mr. Silva is competent to

proceed.

Second, I find that he's acting knowingly and voluntarily and that his plea is not the result of any force, threats or undisclosed promises.

Third, I find that he fully understands his rights and the potential consequences of his plea.

And, finally, I find that there is a factual basis for the plea meaning that he did what's charged in the indictment. Therefore, I'm respectfully recommending that the Court accept Mr. Silva's plea of guilty to Count Two of the indictment.

Turning to Mr. Elliott, do you have any questions about anything we've discussed today?

DEFENDANT ELLIOTT: No.

THE COURT: Do you need any time to discuss anything with your attorney?

DEFENDANT ELLIOTT: No.

THE COURT: Mr. Montgomery, do you know of any reason why Mr. Elliott should not plead guilty?

MR. MONTGOMERY: No, your Honor.

THE COURT: Are you aware of any viable legal defense to the charge?

MR. MONTGOMERY: No.

THE COURT: Mr. Elliott, are you ready to plead at this time?

DEFENDANT ELLIOTT: Yes.

THE COURT: What is your plea to Count Two of the indictment of assault in a federal detention facility, guilty or not guilty?

DEFENDANT ELLIOTT: Guilty.

THE COURT: Are you pleading guilty voluntarily and of your own free will?

DEFENDANT ELLIOTT: Yes.

THE COURT: Has anyone threatened or forced you to plead guilty?

DEFENDANT ELLIOTT: No.

THE COURT: Other than the promises in your written agreement with the government, has anyone promised you anything to make you plead guilty?

DEFENDANT ELLIOTT: No.

THE COURT: Has anyone made any promise to you as to what your sentence will be?

DEFENDANT ELLIOTT: No, nothing.

THE COURT: All right. I'm going to ask you to please tell me in your own words what you did to make you guilty of the crime charged in Count Two of the indictment.

DEFENDANT ELLIOTT: Okay, on August 27th, acting in concert while at the MDC, I was in a fight. While defending myself in the fight I struck John Doe number 2. Acting in concert with a dangerous weapon while in the

fight, John Doe number 2 was seriously injured, suffered injuries.

THE COURT: And what was your intention when you struck John Doe number 2?

DEFENDANT ELLIOTT: For me and my friends not to get stabbed.

THE COURT: What were you trying to do John Doe number 2?

DEFENDANT ELLIOTT: Um, stop him.

THE COURT: Okay.

MS. SHAMI: That's sufficient, your Honor.

THE COURT: Okay. So the allocution satisfies all the essential elements of the charge to which Mr. Elliott is pleading guilty?

MS. SHAMI: Yes, your Honor.

THE COURT: Mr. Montgomery, anything to add?

MR. MONTGOMERY: None.

THE COURT: All right. Based on the information given to me I make the following findings:

First, I find that Mr. Elliott is competent to proceed.

Second, I find that he's acting voluntarily and that his plea is not the result of any force, threats or undisclosed promises.

Third, I find he fully understand his rights and

the potential consequences of his plea.

And, finally, I find there is a factual basis for the plea meaning that he did what's charged in the indictment. Therefore, I respectfully recommend that the Court accept Mr. Elliott's plea of guilty to Count Two of the indictment.

All right. The next step for each of you is that you will each meet with someone from the Probation Department to prepare the presentence report we talked about and I urge you to cooperate with them, obviously with your attorney's advice, but you must be truthful and forthcoming with them.

There is no sentencing date set, correct?

MS. SHAMI: No, not yet, your Honor.

THE COURT: All right. Is there any change to their detention status at this point?

MS. SHAMI: No, your Honor.

THE COURT: Okay. For the record, I'm going to return the plea agreements to the government. Let me do that before I forget. All right.

Is there anything else from the government?

MS. SHAMI: Nothing from the government, your Honor.

THE COURT: Anything from the defense?

MR. GREENWALD: No, your Honor.

MR. MONTGOMERY: No, your Honor. Thank you.

THE COURT: All right. Thank you very much.

MR. GREENWALD: Thank you.

(Matter concluded.)

* * * * *

I certify that the foregoing is an accurate transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

s/ Georgette K. Betts — May 15, 2026

GEORGETTE K. BETTS — DATE